IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 7:16-CR-11-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| WALDA LORENA LUNA, ) | |
| ) | |
| Defendant. ) | |

On August 25, 2020, Walda Lorena Luna ("Luna" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 168]. On October 16, 2020, Luna, pro se, submitted a letter with documents supporting her motion for compassionate release [D.E. 169]. On May 14, 2021, Luna, through counsel, filed a memorandum in support [D.E. 173]. On June 12, 2021, the government responded in opposition [D.E. 178]. As explained below, the court denies Luna's motion.

I.

On June 20, 2016, pursuant to a written plea agreement, Luna pleaded guilty to a superseding criminal information, charging her with conspiracy to commit an offense (mail fraud) against the United States, filing a false income tax return, and aggravated identify theft. See [D.E. 80, 84]. On November 15, 2016, the court held Luna's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 98, 101]; Sent. Tr. [D.E. 157] 3–4; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Luna's total offense level to be 23, her criminal history category to be I, and her advisory guideline range on counts 1 and 2 to be 46 to 57

months' imprisonment with a mandatory sentence of 2 years' consecutive imprisonment on count 3. Sent. Tr. at 4–5. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a) and denying Luna's motion for downward departure or variance, the court sentenced Luna to 57 months' imprisonment on count one, 36 months' concurrent imprisonment on count two, and 24 months' consecutive imprisonment on count three for a total term of imprisonment of 81 months. See id. at 16–20; [D.E. 100,106]. The court also ordered her to pay $3,036,430 in restitution to the Internal Revenue Service ("IRS"). See Sent. Tr. at 26–27; [D.E. 106]. The court also announced that even if it miscalculated the advisory guideline range, it would impose the same sentence as an alternative variant sentence. See Sent. Tr. at 29. On November 29, 2016, Luna appealed. See [D.E. 110]. On December 8, 2017, the United States Court of Appeals for the Fourth Circuit affirmed Luna's sentence. See [D.E. 163, 164].

On August 25, 2020, Luna moved for compassionate release under the First Step Act. See [D.E. 168]. On June 12, 2021, the government responded in opposition. See [D.E. 178].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have

served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

         (I) suffering from a serious physical or medical condition,

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

---

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

In her motion for compassionate release, Luna claims she exhausted her administrative remedies. See [D.E. 168] 2; [D.E. 173] 1; [D.E. 173-3]. Luna filed a request for compassionate release and received a general email reply about compassionate release request procedures. See [D.E. 168, 169-1]. Regardless, the government has not invoked section 3582's exhaustion requirement. Cf. United States v. Muhammad, 16 F.4th. 126, 130 (4th Cir. 2021). Accordingly, the court addresses Luna's motion on the merits.

Luna seeks compassionate release pursuant to section 3582(c)(1)(A). In support of her request, Luna cites the COVID-19 pandemic, the spread of COVID-19 within the Bureau of Prisons ("BOP"), her health conditions, her mother's need for care, her non-violent record, and her release plan. See [D.E. 168, 169, 173].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Luna argues that her health conditions, which she claims include diabetes, obesity, and chronic constipation put her at heightened risk of serious infection from COVID-19. See [D.E. 168] 2–4; [D.E. 173] 1, 9.[2] Luna references articles and studies about the severity of COVID-19 and the difficulty of controlling COVID-19 in prison. See [D.E. 173] at 4–7. Luna is fully vaccinated against COVID-19. See [D.E. 178-1]; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, No. No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *3–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19). Being fully vaccinated reduces Luna's risk of serious infection. Luna also claims that because of COVID-19 she is not receiving adequate medical care for other health conditions including a staph infection. See [D.E. 169] 1. However, Luna has received regular treatment for her medical

---

[2] Luna claims to have diabetes. See [D.E. 168] 3; [D.E. 173] 4. Her BOP medical records, however, do not indicate that she has diabetes. See [D.E. 174]

6

conditions including her staph infection. See [D.E. 174]. She also claims that BOP is not adequately treating her diabetes. See [D.E. 173] 4. However, Luna has not provided any records that indicate that she has diabetes and her BOP health records do not reflect a diabetes diagnoses. See [D.E. 174]. Luna also has not detailed any efforts to receive diabetes treatment from BOP. Accordingly, Luna has not shown that she is unable to manage her medical conditions while incarcerated and reducing Luna's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Luna's health conditions, and the need to care for her mother are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Luna offers a release plan that includes staying with her daughter, seeking employment, and caring for her mother. See [D.E. 168] 4; [D.E. 173] 1, 21. However, Luna has been subject to an ICE detainer since June 7, 2018, and will be transferred to ICE custody upon her release from BOP. See [D.E. 178] 7. This fact undermines both Luna's release plan and the weight of the need to care for her mother as an extraordinary and compelling reason under section 3582(c)(1)(A). Luna is also fully vaccinated against COVID-19, see [D.E. 178-1], which diminishes the risk associated with COVID-19 and, therefore, the weight of the assumption. Cf. Broadfield, 5 F.4th at 803; Baeza-Vargas, 2021 WL 1250349, at *2–4. Regardless, the section 3553(a) factors counsel against reducing Luna's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

7

Luna is 51 years old and is incarcerated for conspiracy to commit offenses against the United States (mail fraud), filing a false income tax return. and aggravated identity theft. See PSR [D.E. 98] ¶¶ 1–5. Luna was involved in a complex scheme to defraud the United States government of millions of dollars. See Sent. Tr. at 13–14; PSR ¶ 12. Greed motivated Luna, who filed numerous fraudulent tax returns. See PSR ¶¶ 11–25. Luna was responsible for a tax loss of $5,442,183 based on the fraudulent returns she filed and for $91,631 for the false returns she filed in her own name. See PSR ¶ 26. Luna and her husband also cashed checks for other individuals charging between 15% and 40% for the services, far in excess of the 3% rate the law allows. See PSR ¶ 12. Luna's offenses and criminal history indicate a record of dishonesty and disrespect for the law. See id. ¶¶ 10, 32–34. Luna entered the United States illegally in 1993. See id ¶ 10. She also has previous charges for giving frictions information to an officer. See PSR ¶ 33.

Luna claims to have been a model inmate while incarcerated and notes that she is a non-violent offender. See [D.E. 173-3] 2. The court must balance this information with the gravity of her criminal conduct, the need to punish her, the need to promote respect for the law, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Luna's potential exposure to COVID-19, her medical conditions, her need to care for her mother, and her release plan. The court recognizes that Luna's daughter is willing to have her stay with her upon release and also that her release back into the community is unlikely even if the court grants compassionate release. See [D.E. 168] 4; [D.E. 173] 1,21; [D.E. 178] 7. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Luna's arguments, the government's persuasive response, the need to punish Luna for her serious criminal behavior, to

8

incapacitate Luna, to promote respect for the law, to deter others, and to protect society, the court denies Luna's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Luna's request for home confinement, see [D.E. 173] 1, 3, Luna seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Luna requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Luna's request for home confinement.

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 65] and DISMISSES defendant's request for home confinement.

SO ORDERED. This 7 day of December, 2021.

JAMES C. DEVER III
United States District Judge

9